(No. 40377.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
GEORGE LAGIOS, Appellant.

*Opinion filed March 28, 1968.*

WARD, J., took no part.

ROGER P. PASCAL, of Chicago, appointed by the court,
for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield,
and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED
G. LEACH, Assistant Attorney General, and ELMER C. KIS-
SANE and JAMES S. VELDMAN, Assistant State's Attorneys,
of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Petitioner (defendant) George Lagios was convicted in
the circuit court of Cook County of robbery and sentenced
to the penitentiary for a term of not less than 5 nor more
than 10 years. He later filed a petition in the nature of writ

of error *coram nobis* under section 72 of the Civil Practice Act, which was dismissed by the trial court. Defendant appealed his conviction to the Appellate Court, First District (51 Ill. App. 2d 440), which court reviewed his conviction and also considered the allegations raised by his section 72 petition. His conviction was affirmed. The present action was then commenced under the Post-Conviction Hearing Act. (Ill. Rev. Stat. 1965, chap. 38, par. 122—1 *et seq.*) The trial court dismissed without a hearing and this appeal is from the judgment of dismissal.

Defendant contends there was perjured testimony adduced at his trial which was known by the prosecution to be false and that he was thereby denied due process. This is based upon discrepancies in the testimony of the prosecuting witness, James Miho, with respect to the amount of money taken from him, the denominations of the currency and the source of the funds. A copy of a police report attached to the petition contains the following information. Defendant was stopped by a police officer who had observed him running, and a witness said he had seen the defendant "jackroll" a man on Division Street. Miho identified defendant as the person who had forcibly reached into his left pants pocket, took $285 from him and had torn out the pocket in the process. When searched defendant was found to have $269 in his pockets consisting of two fifty-dollar bills, four twenties, seven tens, three fives and four ones. It noted that there was a discrepancy in that the victim stated the denomination of the bills to be one hundred-dollar bill, one fifty and the rest in twenties and tens. Also attached to the petition was about two pages of cross-examination of Miho who stated he had $285, that it was paid to him by Don the Beachcomber (his employer) and that the type of bills were "Oh, about a couple of $50.00 bills and a twenty and a ten all mixed with smaller ones." Under further cross-examination the question was

asked, "What about a hundred-dollar bill?" The response was "Maybe so", and under further questioning he answered that there was a hundred-dollar bill.

The next discrepancy concerns the source of Miho's money. He stated that he got it from Don the Beachcomber. Following are some of the questions and answers on cross-examination included as an exhibit in the petition:

"Q. Where did you get that money?

A. Because I got  *  *  *.

Q. Just a moment. You got it from working at Don the Beachcomber's?

A. Of course.

Q. Is that right?

A. Right.

Q. Was it paid to you in a check and then you cashed the check or you got the money?

A. I got the cash.

Q. Don the Beachcomber paid you two hundred and eighty-five dollars?

A. Yes.

Q. Correct?

A. Yes.

Q. And he paid you at what time, that same day?

A. No, I'm going vacation.

Q. What day did he pay you?

A. Oh, its  *  *  *

Q. The same day that this happened?

A. That is it.

Q. That night before?

A. Before I come home. I'm going vacation next day so  *  *  *

Q. Wait  *  *  *

A. I need money."

In an attempt to show perjury the affidavit of a private detective retained by defendant's counsel is attached. It relates that as a result of his investigation he learned that

James Miho was not paid on Sunday or Monday July 29 and 30, 1962, that Miho is not paid in cash but is paid by check on Tuesdays before noon, that his salary totaled $60 per week and that occasionally Miho received a salary advance of not to exceed $20.

During oral argument of this cause the prosecution was directed to file the record in the section 72 proceeding. It appears therefrom that defendant was represented by three attorneys and the petition and exhibits there, while more adroitly drawn, were practically identical with the post-conviction petition.

The knowing use of false or perjured testimony by the prosecution to procure a conviction constitutes, of course, a denial of due process. (*Napue* v. *Illinois,* 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173; *People* v. *McKinney,* 31 Ill.2d 246.) However, mere conflicts in the testimony of a witness with his prior statements or with other evidence does not establish that he has perjured himself. (*People* v. *Brasfield,* 35 Ill.2d 560; *People* v. *Doherty,* 36 Ill.2d 286; *People* v. *Evans,* 37 Ill.2d 27.) Defendant argues that in the foregoing and other cases in this State "involving the materiality of knowingly used false testimony have involved at least a review of the original trial record" and minimizes the importance of the appellate court opinion because it did not have the original record before it. This argument overlooks the fact that both petitions contained that portion of the original record which he contends established the perjured testimony and it seems a natural assumption that defendant quoted that portion which would best tend to support his theory.

Assuming that the quoted portion of the evidence is correct and the factual allegations true and taking them in the light most favorable to defendant, they fail to show that perjured testimony was used. A reading of the testimony of Miho on cross-examination clearly indicates a language difficulty, that he was having trouble understanding

the questions put to him and that he was cut off several times when he tried to answer questions. He stated that he was going on a vaction the following day but was never permitted to follow up his statement with an explanation as to how that affected his financial situation. The testimony of this witness does not suggest deliberate false statements made with intent to mislead and certainly does not indicate participation in perjury by the prosecution.

We find no error in the dismissal by the circuit court of Cook County and its judgment is affirmed.

*Judgment affirmed.*

Mr. Justice Ward took no part in the consideration or decision of this case.